161 So. 185

Succession of JACOBSEN.

No. 33271.

April 1, 1935.

Rehearing Denied April 29, 1935.

James N. Brittingham, Jr., and Morris B. Redmann, both of New Orleans, for appellant.

Cahn & Cahn and Brian & Brian, all of New Orleans, for appellees.

FOURNET, Justice.

Tony Jacobsen died intestate in the city of New Orleans, where he was domiciled, on

the 8th day of April, 1932, leaving $3,491.17 in three banks and stock in several home-stead associations in the city of New Orleans of the par value of $19,500, admitted to be worth about $9,000 at this time. His succes-sion was opened upon the application of Al-bert W. Newlin, public administrator for the parish of Orleans, who was appointed and qualified as administrator of the estate.

Flora Jacobson, Annie Jacobson Hyman, and Herman Jacobson filed a petition of in-tervention, seeking to have themselves, to-gether with another sister, Sophie Jacobson Krone, recognized as the sole heirs at law of decedent, and that, as such, they be sent in-to possession of all the property he died possessed of in the proportion of one-fourth each, subject to the payment of the inher-itance tax.

Subsequently, Mrs. Henrietta Krone, wife of Martin I. Golden, intervened, alleging that she is the only daughter of her mother, Mrs. Sophie Jacobson Krone, who died in the city of New York on the 4th day of April, 1933, and prayed to be recognized as the sole heir of her deceased mother, and that she be sent into possession of an undivided one-fourth of the property belonging to this succession.

The public administrator filed an excep-tion of no cause or right of action to the petition of Mrs. Henrietta K. Golden and filed an answer denying all the allegations of the other petition.

The lower court granted judgment, recog-nizing interveners as the sole heirs at law of the decedent, Tony Jacobsen, and, as such, placed them in possession of all the proper-ty left by the deceased, and from that judg-ment, Albert W. Newlin, the public adminis-trator for the parish of Orleans and admin-istrator of the succession, has appealed.

It is not disputed that interveners are the legitimate children and grandchild, respec-tively, of Adolph Jacobson, brother of Fanny Jacobsen, and that Fanny Jacobsen was the mother of decedent. The sole question be-fore us on this appeal is the legitimacy of Tony Jacobsen, de cujus.

The evidence on that question consists of a stipulation between counsel, in which it is agreed that, if Flora Jacobson, Annie Jacob-son Hyman, and Herman Jacobson, interven-ers, were called as witnesses and permitted to testify in this case, they would state in effect that *their father and his sister Fanny Jacobsen* (mother of decedent) told them that she (Fanny Jacobsen) had been married abroad to the father of Tony Jacobsen, whose name they did not know, but he was the second cousin of Fanny Jacobsen; that he died prior to the immigration of Fanny Jacobsen and her son Tony to this country, and that said Tony Jacobsen was always accepted and recognized by the witnesses and their father as the legitimate child of Fanny Jacobsen and was treated by all mem-bers of the family and their friends and acquaintances as a legitimate member of the family.

In the stipulation it is also agreed that if Arthur Hyman and Joseph Krone were call-ed as witnesses and permitted to testify that they would say that they are, respectively, the husbands of Annie Jacobson and Sophie Krone (since deceased), and that they would make substantially the same statements as interveners made, i. e., that Tony Jacobsen

was always considered and recognized as a legitimate member of the family. It is further stipulated that none of the witnesses could testify of their own personal knowledge whether or not Fanny Jacobsen, the mother of the decedent, *was ever in fact married;* nor could they testify whether or not *the decedent was in fact the legitimate or illegitimate child of Fanny Jacobsen;* that none of the witnesses either saw or knew the father of Tony Jacobsen, nor could any of them produce any documentary evidence of Fanny Jacobsen's marriage. It is also admitted in the stipulation that the document marked "J#3" is a certified copy of the record of the birth of Tony Jacobsen, and the document "J#4" is a correct translation thereof from German to English and reads as follows:

"State Archive of the Free and Hanseatic City of Hamburg

..........................................

June 21st, 1933.

Extract

of the register of baptism of the Evangelical Lutheran Church

St. Kakobi at Hamburg

Year 1857, Nr. 547

First Name and Family Name of Father:....

Place of Birth: ..........................

Residence and Trade: ...................

First and Maiden Name of the Mother:

Fanny Jacobson (Jewess)

Place of Birth: Hamburg

First Name and Sex of the Child: Theodor Anton Albert, a boy, spurius

Day and Hour of his Birth: June 14th, 1857, 6 ocl. in the evening.

Day of Baptism: August 28th.

First and Last Name of the Sponsors:

1. Dorothea Christiane Busch
2. ..................................
3. ..............................

Baptised by Pastor Kunhardt. Certified (Seal of the State Archive)    I. A.

Charges RM.2.—                        sgd. Ruvogel

..........................................

Received: Charges in the amount of RM.5.— State Office for Foreign Affairs."

Counsel for the interveners contend that the certified copy of the baptismal record is not of sufficient weight as evidence to overcome the presumption of decedent's legitimate filiation, and, in support thereof, cite the case of Tyson v. Raines, 165 La. 625, 115 So. 803, 804, quoting from the opinion as follows: "In all Christian countries, where filiation is established, the law presumes that the issue thereof is prima facie the offspring of a lawful, rather than of a meretricious, union of parents. Orthwein v. Thomas, 127 Ill. 554, 21 N. E. 430, 4 L. R. A. 434, 11 Am. St. Rep. 159. The presumption indulged in favor of legitimacy cannot be overcome by mere rumor. Vaughan v. Rhodes, 2 McCord (S. C.) 227, 13 Am. Dec. 713. In the absence of persuasive evidence, the denial of marriage cannot defeat the presumption of the legitimacy of the issue, or throw upon such issue the burden of proof of the marriage of the parents, and the presumption in favor of marriage and the legitimacy of the offspring, is strengthened by the lapse of time. In re Pickens' Estate, 163 Pa. 14, 29 A. 875, 25 L. R. A. 477."

In that case the legitimacy of the decedent was attacked upon the theory that his father was a white man and his mother a free

woman of color, marriages between the races being prohibited at the time of his conception by the laws of this state. *There was no doubt of their marriage in that case, or that he was born of the marriage.* The only question was whether or not his father was a white man, and that question was decided by the court in the following language: "Plaintiffs have failed, even by a preponderance of evidence, to establish the one fact which it is essential they must establish before they are entitled · to recover, viz. that John Haines was a white man, and therefore the lower court properly rejected plaintiffs' demands at their cost."

It is obvious that the quotation from the opinion in that case was intended to follow the reasoning of the court that a child born during marriage is presumed to be legitimate.

From an examination of all cases wherein the legitimacy of heirs was contested, we find that the main question was *whether or not* they were born of a lawful marriage.

This court, in the case of Boykin et al. v. Jenkins et al., 174 La. 335, 140 So. 495, 496, in its opinion, said:

"*It is only those children who are born in or as a result of wedlock, or who are legitimated by their father and mother in the manner prescribed by law, who may be termed lawful or legitimate heirs of their parents.* (Italics ours.)

"But proof of the celebration of a marriage between parents is not indispensable to the children's right to inherit from them, for such proof cannot always be made. In the absence of such proof, however, they must show that they were born of parents who were so living together and so conducting themselves toward each other in society, holding themselves out as man and wife, as to raise the presumption that they were married. *When the facts shown are such as to raise the presumption of marriage, the further presumption that their children are legitimate necessarily follows.*" (Italics ours.)

It necessarily follows that the interveners in the case at bar, in order to establish the legitimacy of Tony Jacobsen, must prove the marriage of his mother, Fanny Jacobsen, to his father. The marriage certificate would be the best evidence, but in the event that the certificate could not be produced, the marriage might be proved by secondary or other competent evidence. In this case there is no evidence of the marriage of the decedent's mother and his father other than the statements of the interveners' father and decedent's mother to interveners, and also the husbands of Sophie Jacobson and Annie Jacobson, neither of whom knew the father of decedent, or even saw him. There is nothing in the record to show that the father of decedent and his mother ever lived together as man and wife or even held themselves out as husband and wife. In the absence of such evidence, there cannot be a presumption of a marriage which is necessary to raise the presumption of the legitimacy of decedent.

The court said, in the case of Boykin v. Jenkins, supra:

"*A presumption of legitimacy arises also from proof of legitimate filiation. The Code (article 193 et seq.) prescribes the methods of proving legitimate filiation. It may be*

*proved by a transcript from the register of birth or baptism.* (Italics ours.)

" 'If the register of births and baptisms is lost, or if no such register has been kept, it suffices for the child to show that he has been constantly considered as a child born during marriage.' Civ. Code, art. 194. * * *

*"The making of such proof raises the presumption that the child was born during or as a result of marriage, and is therefore legitimate."* (Italics ours.)

From an examination of article 193 et seq. of the Civil Code and the above quotation from the opinion of the court, we can come to but one conclusion, and that is that legitimate filiation càn be proved, and the best evidence to prove it is the register of births and baptisms, and it is only in the absence of such registration, either if lost or destroyed or not made, that "it suffices for the child to show that he has been constantly considered as a child born during marriage." Civ. Code, art. 194 and see, also, Civ. Code, art. 195.

There is no competent evidence in the record to establish a marriage between Fanny Jacobsen and the father of decedent. Therefore, there is no presumption of legitimacy of Tony Jacobsen. The evidence introduced by interveners was relevant to show filiation, but was not sufficient to overcome the contents of the best evidence, the certificate of baptism, which shows that decedent was "spurius" or illegitimate. (See definition of spurious in Webster's New International Dictionary, Second Edition.) This is particularly true since there is no

claim that the certificate is not genuine or erroneous.

For the reasons assigned, the judgment of the lower court is annulled, and plaintiffs' demands are rejected at their cost.

O'NIELL, C. J., dissents.